**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)   No. 21-0026** (BOR Appeal No. 2055520)
(Claim No. 2018016155)

**CONNIE TITUS,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Murray American Energy, Inc., by Counsel Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Connie Titus, by Counsel Robert L. Stultz, filed a timely response.

The issues on appeal are medical benefits and temporary total disability benefits. The claims administrator denied a request for temporary total disability benefits on February 25, 2020. On March 10, 2020, the claims administrator denied a request for continued physical therapy. The Workers' Compensation Office of Judges ("Office of Judges") reversed the February 25, 2020, decision in its July 2, 2020, Order and granted Ms. Titus temporary total disability benefits from July 8, 2019, to February 25, 2020, or until she reached the 104-week temporary total disability benefits maximum, whichever occurs first. In its Order, the Office of Judges also affirmed the March 10, 2020, claims administrator decision. The Office of Judges' Order was affirmed by the Board of Review on December 17, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

1

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Titus, a coal miner, was injured when the bus she was driving in a coal mine struck another bus on January 12, 2018. The Employees' and Physicians' Report of Injury, completed that day, indicates Ms. Titus was injured when she was struck head on by a bus. The diagnoses were right hip strain, right knee sprain, lower back strain, unspecified head injury, and left shoulder pain. The claim was held compensable for low back strain, right hip strain, and right knee sprain on January 26, 2018. In a separate decision that day, the claim was also held compensable for cervical ligament sprain and left shoulder joint sprain. The claims administrator added right hip strain to the claim on September 21, 2018.

A September 25, 2018, operative note by Dr. Schweizer indicates Ms. Titus underwent a right hip arthroscopy with labral debridement for a right hip labral tear with calcification and tearing in the superior lateral labrum. A September 27, 2018, Initial Examination report by Hudson Premier Physical Therapy indicates Ms. Titus was to be treated with therapeutic exercises, gait training, manual therapy, and iontophoresis. Dr. Schweizer performed left shoulder surgery on January 29, 2019. The post-operative diagnoses were shoulder pain of unspecified chronicity, subacromial impingement, SLAP tear, biceps tendonitis, acromioclavicular joint arthritis, mild rotator cuff partial thickness tear, and subacromial bursitis.

On February 26, 2019, the claims administrator added cervical sprain and left shoulder joint sprain to the claim. On March 29, 2019, the claims administrator added right hip sprain to the claim and denied authorization of an evaluation by Dr. Schweizer, a left shoulder MRI, a referral to a pain clinic, a physical therapy consultation, physical therapy, injections, authorization of a left shoulder arthroscopy, and an arm sling. The Office of Judges added right hip labral tear to the claim and authorized the requested medical benefits on March 29, 2019. The decision was affirmed by the Board of Review and this Court.

2

David Soulsby, M.D., performed an Independent Medical Evaluation on October 22, 2019, in which he found that Ms. Titus had reached maximum medical improvement. He noted that the low back strain was superimposed upon preexisting degenerative disc disease, which continued to cause symptoms. Dr. Soulsby also noted that Ms. Titus had mild to moderate osteoarthritis in the right knee and left shoulder. Ms. Titus also suffered from degenerative disc disease in the cervical and lumbar spine. Dr. Soulsby assessed 4% cervical impairment, 4% lumbar impairment, 5% left shoulder impairment, and 4% right hip impairment for a total of 18% impairment. Dr. Soulsby noted that Ms. Titus's right hip issues could be due to hamstring tendonitis/ischial bursitis related to the compensable injury. He recommended a PRP injection and stated that the right hip would be at maximum medical improvement following such treatment. Dr. Soulsby opined that Ms. Titus was not temporarily and totally disabled after May 1, 2019. She has numerous noncompensable conditions which rendered her unable to work past that date. He noted that Ms. Titus had right foot problems which preexisted the compensable injury.

In a November 22, 2019, Addendum to his report, Dr. Soulsby was asked to clarify his right hip findings. He stated that Ms. Titus had reached maximum medical improvement for the compensable right hip labral tear. He opined that a PRP injection would help Ms. Titus's hamstring tendonitis. Dr. Soulsby could not determine if the tendonitis was related to the compensable injury. He stated that Ms. Titus was at maximum medical improvement for the compensable conditions and no further treatment was required for them. He also stated that Ms. Titus no longer qualified for temporary total disability benefits.

In a November 25, 2019, Order, the Office of Judges modified a June 12, 2019, claims administrator decision and granted temporary total disability benefits from July 8, 2019, and thereafter as substantiated by proper medical evidence. The Office of Judges noted that though Ms. Titus was released to return to light-duty work, the employer could not accommodate her restrictions.

Dr. Schweizer indicated in a December 8, 2019, treatment note that Ms. Titus reported left shoulder and right hip pain. The diagnoses were right partial proximal hamstring tendon tear, right hip abductor tendonitis, chronic right hip pain, and left shoulder SLAP tear. Ms. Titus was to continue physical therapy. Ms. Titus returned on January 13, 2020, and received a referral for physical therapy for the left shoulder and left hip hamstring tendon tear. Ms. Titus was to remain off of work. Dr Schweizer completed an Attending Physicians' Report on January 13, 2020, in which he stated that Ms. Titus was not at maximum medical improvement.

Ms. Titus underwent a right hip PRP injection on January 22, 2020. On February 24, 2020, Dr. Schweizer stated in a treatment note that the right hip PRP injection provided no relief for Ms. Titus. Dr. Schweizer diagnosed right partial hamstring tendon tear, right hip abductors tendonitis, hip sprain, left shoulder injury, biceps tendonitis, and right acetabular labrum tear. He recommended another PRP injection. Dr. Schweizer opined that Ms. Titus was no longer going to be capable of performing her prior work duties. He felt that she may benefit from more physical therapy. Dr. Schweizer completed an Attending Physicians' Report that day in which he stated that Ms. Titus was unable to work and listed the estimated period of disability as permanent.

3

On February 25, 2020, the claims administrator denied temporary total disability benefits. On March 10, 2020, it denied a request for continued physical therapy. Ms. Titus was discharged from physical therapy on April 6, 2020. In the Discharge Note, Hudson Premier Physical Therapy stated that Ms. Titus completed eighty-one visits for the left shoulder but still had left shoulder pain on discharge. Ms. Titus had eighty-nine visits for the right hip but still continued to have hip pain on discharge. On April 6, 2020, Dr. Schweizer indicates that Ms. Titus reported improvement in her right hip pain following a PRP injection but still had some pain in the hamstring insertion site. A second PRP injection was recommended.

In an April 6, 2020, Order, the Office of Judges reversed a December 12, 2019, claims administrator decision and authorized physical therapy. The Order noted that Ms. Titus had hip surgery in September 2018 and shoulder surgery in January 2019, causing the need for two separate rounds of physical therapy. On April 22, 2020, Ms. Titus returned to Dr. Franco and reported ten to twenty percent right hip pain relief following the January PRP injection. Dr. Schweizer recommended a repeat injection and physical therapy, which were both authorized. A May 5, 2020, Attending Physicians' Report completed by Dr. Schweizer indicates Ms. Titus reached maximum medical improvement on February 24, 2020. She had been disabled since November 2, 2018.

The Office of Judges affirmed the claims administrator's denial of additional physical therapy in its July 2, 2020, Order. In that same Order, the Office of Judges also reversed the claims administrator's denial of temporary total disability benefits and granted such benefits from July 8, 2019, to February 25, 2020, or until Ms. Titus reaches the 104-week temporary total disability benefits maximum, whichever occurs first. Regarding additional physical therapy, the Office of Judges found that Ms. Titus had physical therapy both before and after her hip and shoulder surgeries. On April 6, 2020, the Office of Judges reversed a December 12, 2019, decision and authorized physical therapy. In that Order, the Office of Judges found that Ms. Titus had seventy-five physical therapy visits for two separate body parts. It concluded that additional physical therapy was reasonable. In the instant case, the Office of Judges noted that the employer submitted updated information indicating Ms. Titus had completed eighty-one physical therapy visits for the left shoulder and eighty-nine visits for the right hip. Ms. Titus stopped physical therapy because she had no further authorization and because of the corona virus.

The Office of Judges found that the evidence indicates Ms. Titus never had the physical therapy authorized in the June 6, 2020, Office of Judges Order due to the shutdown caused by the corona virus. The Office of Judges determined that limited physical therapy is warranted for the right hip and found that such therapy should still be authorized. However, additional physical therapy beyond that authorized by the June 6, 2020, Order, was found to be unnecessary. Due to the lag time in litigation at the corona virus shutdown, requests for physical therapy became stacked and a double round of physical therapy is not necessary. The Office of Judges therefore affirmed the March 10, 2020, claims administrator decision denying additional physical therapy.

Regarding temporary total disability benefits, the Office of Judges found that Ms. Titus last received such benefits on July 8, 2019. She now requests benefits from July 9, 2019, to the present. The Office of Judges determined that Dr. Schweizer excused Ms. Titus from work due to the

4

compensable injury from July 8, 2019, until August 19, 2019. At that point, he released her to return to light duty work, which the employer appeared to be unable to accommodate. From October 15, 2019, through December 2, 2019, Dr. Schweizer stated that Ms. Titus was disabled from work. In a January 13, 2020, Attending Physician's Report, Dr. Schweizer stated that Ms. Titus had not yet reached maximum medical improvement. He found that she reached maximum medical improvement on February 24, 2020. Dr. Schweizer opined that Ms. Titus was unable to return to her former job. The Office of Judges found that Ms. Titus proved that she did not reach maximum medical improvement until February 24, 2020. Dr. Soulsby's Independent Medical Evaluation was determined to be unreliable. Though he found Ms. Titus to be at maximum medical improvement, he recommended PRP injections for the right hip. The Office of Judges concluded that Ms. Titus is entitled to temporary total disability benefits from July 8, 2019, until she reached the 104-week maximum for temporary total disability benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 17, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1(a) workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. West Virginia Code § 23-4-3(a)(1) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. A preponderance of the evidence indicates that due to the corona virus, Ms. Titus has yet to undergo the physical therapy authorized on June 6, 2020. Ms. Titus has failed to show sufficient justification for additional physical therapy beyond what has already been authorized.

Pursuant to West Virginia Code § 23-4-7a, temporary total disability benefits will cease when Ms. Titus has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. A preponderance of the evidence indicates that Ms. Titus reached maximum medical improvement for the compensable injury on February 24, 2020, and still remains unable to return to her former employment. She is therefore entitled to temporary total disability benefits for the period that she was unable to work before reaching maximum medical improvement.

Affirmed.

**ISSUED: April 20, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment